OPINION
{¶ 1} This is an appeal by plaintiffs-appellants, Teresa Hopkins, Eric Hopkins, and Eriq Hopkins, from a judgment of the Franklin County Court of Common Pleas, granting summary judgment in favor of defendants-appellees, Columbus Board of Education ("school board") and its employees, Julie Watson, Cindy Cremeans, Nancy Lensenmayer, Twanna Walker, and Dan Graves. *Page 2 
 {¶ 2} Appellants Teresa and Eric Hopkins are the parents of appellant Eriq Hopkins (individually "Eriq"). On April 13, 2006, appellants filed a complaint against appellees, alleging that Eriq, a special needs student in the Columbus school system, had been mistreated while at school. The complaint included causes of action for civil assault, conspiracy to cover up the alleged assaults, educational malpractice, and negligent hiring and negligent termination of services. The complaint alleged that the conduct at issue occurred between September 2001 and January 2004.
 {¶ 3} On June 14, 2006, appellees filed a motion for judgment on the pleadings relating to the claims by appellants Teresa and Eric Hopkins. On August 8, 2006, the trial court filed a decision granting appellees' motion for judgment on the pleadings, finding that the claims presented by appellants Teresa and Eric Hopkins were barred by the applicable statute of limitations.
 {¶ 4} On December 18, 2006, appellants filed an amended complaint, which the trial court construed as setting forth causes of action for assault, civil conspiracy, educational malpractice, reckless and/or negligent hiring and retention of services, and infliction of emotional distress. Appellees filed answers to the amended complaint.
 {¶ 5} On March 30, 2007, appellees filed a motion for summary judgment. On May 4, 2007, appellants filed a memorandum in opposition to the motion for summary judgment. By decision filed June 22, 2007, the trial court granted appellees' motion for summary judgment. More specifically, the court found that appellants' claims against the school board for assault, conspiracy, negligent hiring and retention, educational malpractice, and infliction of emotional distress were barred on the grounds that none of the exceptions under R.C. 2744.02(B) were applicable. As to the individually named *Page 3 
school employees, the court found that these appellees were authorized to use restraint, pursuant to R.C. 3319.41, and that the evidence did not show the requisite intent for appellants to maintain assault and battery claims. The decision of the trial court was journalized by judgment entry filed August 7, 2007.
 {¶ 6} On appeal, appellants set forth the following two assignments of error for this court's review:
 Argument of Law Number One: In a decision for summary judgment the allegations in the complaint must be construed in favor of the party against whom summary judgment is sought.
 Argument of Law Number Two: The Common Pleas law [sic] interpreted the statute in an unconstitutional manner when it denied the Plaintiff the use of the Courts to seek redress.
 {¶ 7} Appellants' two assignments of error are somewhat interrelated and will be considered together. Under the first assignment of error, appellants argue that the trial court failed to construe the allegations in the complaint in favor of the non-moving party. Under the second assignment of error, appellants contend that the trial court's application of the relevant statutory provisions denied them redress of the courts.
 {¶ 8} We initially note that appellants, in support of the first assignment of error, cite Civ.R. 12(C), pertaining to judgments on the pleadings. Specifically, appellants cite the rule for the proposition that allegations of wrongdoing or misconduct in a complaint must be construed as if true. Despite appellants' reliance upon Civ.R. 12(C), we note that their appeal challenges the trial court's decision granting appellees' motion for summary judgment. *Page 4 
 {¶ 9} Unlike a motion for judgment on the pleadings, in evaluating a motion for summary judgment a trial court may consider matters outside the pleadings. In the instant case, in reviewing appellees' motion for summary judgment, the record indicates the trial court afforded the parties the opportunity to present evidentiary materials, and it is clear that the trial court considered matters outside the pleadings, including affidavits and depositions. Accordingly, we review this matter pursuant to the summary judgment standard under Civ.R. 56.
 {¶ 10} An appellate court reviews a trial court's grant of summary judgment de novo. Doe v. Shaffer (2000), 90 Ohio St.3d 388, 390. Summary judgment is appropriate only where "`(1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion when viewing evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party.'" Id., quoting Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105.
 {¶ 11} As noted under the facts, the trial court construed appellants' amended complaint as setting forth causes of action for civil assault, conspiracy, reckless and/or negligent hiring and retention, and educational malpractice and infliction of emotional distress. In the first assignment of error, appellants do not discuss any of these specific claims, nor do they address the issue of whether the trial court properly analyzed the issue of immunity as it relates to a political subdivision and its employees under R.C. Chapter 2744. Rather, appellants generally assert that the trial court erred in failing to consider each allegation "as having been proven." (Appellants' brief, at 11.) *Page 5 
 {¶ 12} Under Ohio's Political Subdivision Tort Liability Act, codified under R.C. Chapter 2744, a "three-tiered analysis" is used to determine whether a political subdivision is entitled to immunity from civil liability. Aratari v. Leetonia Exempt Village School Dist., Columbiana App. No. 06 CO 11, 2007-Ohio-1567, at ¶ 16. The first tier, R.C.2744.02(A), "grants broad immunity to political subdivisions." Id. In this respect, R.C. 2744.02(A)(1) states in part: "Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee * * * in connection with a governmental or proprietary function."
 {¶ 13} However, the immunity established under R.C. 2744.02(A) is not absolute; rather, under the second-tier of analysis, "one of five exceptions set forth in R.C. 2744.02(B) may serve to lift the blanket of general immunity." Aratari, supra, at ¶ 16. For purposes of the instant action, R.C. 2744.02(B) states in pertinent part:
 Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
 * * *
 (2) Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.
 * * *
 (4) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, *Page 6 
 death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function * * *
 {¶ 14} Finally, "under the third tier of the analysis, immunity may be `revived' if the political subdivision can demonstrate the applicability of one of the defenses found in R.C. 2744.03(A)(1) through (5)."Aratari, supra, at ¶ 16. R.C. 2744.03(A), setting forth those defenses or immunities, states in part:
 In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
 * * *
 (3) The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.
 * * *
 (5) The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.
 {¶ 15} R.C. 2744.03(A)(6) provides that, in addition to any immunity or defense set forth in R.C. 2744.03(A)(7), an employee is immune from liability unless one of the following applies: "(a) The employee's acts or omissions were manifestly outside the *Page 7 
scope of the employee's employment or official responsibilities; (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code."
 {¶ 16} In response to appellees' motion for summary judgment, appellants cited the provisions of R.C. 2744.02(B)(2) and (4) as imposing liability on the school board. The trial court, however, found none of the exceptions under R.C. 2744.02(B) applicable to the actions of the school board in this case. More specifically, in addressing the exception under R.C. 2744.02(B)(2), the trial court held that this provision was inapplicable to the instant case inasmuch as it deals only with employees of a political subdivision engaged in "proprietary functions]."
 {¶ 17} We agree with the trial court's determination that the exception under R.C. 2744.02(B)(2) is inapplicable. As noted by the trial court, the school board is a political subdivision as defined under R.C. Chapter 2744. In Downing v. Columbus Bd. of Edn. (Feb. 13, 1992), Franklin App. No. 91AP-981, this court observed that, "[p]ursuant to R.C. 2744.01(C)(1) and (2)(c), a `governmental function' includes the provision of a system of public education, and, pursuant to subdivision (F), a school district is considered to be a `political subdivision.'" Moreover, "R.C. 2744.01(G)(1)(a) makes clear that any function listed under R.C. 2744.01(C)(2) cannot be a `proprietary function.'" Mead v.Lakewood School Dist. Bd. of Edn. (Aug. 5, 1998), Licking App. No. 97 CA 113. Thus, "except as specifically provided in R.C. 2744.02(B)(1), (3), (4) and (5), with respect to governmental functions, political subdivisions retain their cloak of immunity from lawsuits stemming from employees' negligent or reckless acts." Wilson v. Stark Cty. Dept. ofHuman Serv. (1994), *Page 8 70 Ohio St.3d 450, 452. Here, because the alleged conduct arose out of the performance of a governmental function, and R.C. 2744.02(B)(2) only imposes liability for proprietary functions, the trial court in the instant case did not err in rejecting appellants' contention that R.C.2744.02(B)(2) imposed liability on the school board.
 {¶ 18} Except for one of the alleged incidents, discussed more fully below, the version of R.C. 2744.02(B)(4) at issue in this matter is the amended version, effective April 9, 2003, pertaining to "physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function." As found by the trial court, none of the allegations in appellants' complaint include an assertion that Eriq was injured as a result of a physical defect on school grounds, and, therefore, this exception does not apply to the school board for alleged conduct occurring subsequent to the effective date of the 2003 amendment.
 {¶ 19} On the date of one of the alleged incidents, identified by the trial court as the "cheese incident," the provision of R.C.2744.02(B)(4) in effect stated in part: "political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of buildings that are used in connection with the performance of a governmental function[.]"
 {¶ 20} Regarding the "cheese incident," paragraph 8 of appellants' amended complaint alleged the following:
 [In] September 2001, while Eriq was in kindergarten, several events with unfortunate consequences occurred. Among the worst, Eriq was allowed to eat cheese. The C.B.E. and its employess knew, or should have known, that Eriq was highly allergic to cheese. As a result of his reaction to eating a food he was allergic to, Eriq wandered away from school. He was able to do so because of lack of supervision. Eriq's parents *Page 9 
 (plaintiffs herein) were not notified he was missing, nor was an Amber Alert ever issued. The police were not even notified. Some time later Eriq was found, blocks away from the school, by a fifth grade "posse," organized to find him.
 {¶ 21} Appellants' complaint further asserted that the allegations in paragraphs 1-44 of the complaint involved "deliberate assaults" by appellees on Eriq. (Appellants' amended complaint, at ¶ 45.)
 {¶ 22} Here, to the extent the complaint alleged the school board engaged in intentional tortious conduct, the trial court correctly determined the political subdivision was immune from such claims. SeeFeatherstone v. Columbus, Franklin App. No. 06AP-89, 2006-Ohio-3150, at ¶ 11 ("Because R.C. 2744.02[B] contains no specific exception for intentional torts, Ohio courts have consistently held that political subdivisions are immune from intentional tort claims"); Thayer v. WestCarrollton Bd. of Edn., Montgomery App. No. 20063, 2004-Ohio-3921, at ¶ 14 ("Because an intentional tort is not the result of negligence, an intentional tort is not an exception to the broad immunity generally enjoyed by political subdivisions").
 {¶ 23} Finally, even assuming the applicability of the exception under R.C. 2744.02(B)(4) to the cheese incident allegations, we find that the trial court did not err in finding that immunity would be reinstated pursuant to R.C. 2744.03(A). Specifically, the trial court found that appellants failed to present evidence that the school board's judgment or discretion, including the discretion in determining whether to retain its employees, was done with malicious purpose, in bad faith, or in a wanton or reckless manner. Upon review of the allegations arising out of the cheese incident, and construing *Page 10 
the facts most strongly in favor of appellants, we find that the trial court properly granted summary judgment in favor of the school board as to this claim.
 {¶ 24} We also find no error with the trial court's grant of summary judgment as to appellants' claim for educational malpractice. As observed by the trial court, there is a lack of authority supporting such a cause of action under Ohio law. See Lawrence v. Lorain Cty.Community College (1998), 127 Ohio App.3d 546, 549 ("Ohio does not recognize educational malpractice claims for public policy reasons");Poe v. Hamilton (1990), 56 Ohio App.3d 137, 139 (finding plaintiff could not prevail on claim for educational malpractice "as a matter of public policy"); Malone v. Academy of Court Reporting (1990),64 Ohio App.3d 588, 593 (noting that "so-called educational malpractice claim has not been well received by the few courts which have addressed the issue").
 {¶ 25} Accordingly, the trial court did not err in granting summary judgment in favor of the school board as to appellants' claims.
 {¶ 26} The trial court also granted summary judgment in favor of the individual appellees, i.e., employees of the school board, as to the claims asserted against them. Specifically, regarding the civil assault and battery claims, the trial court noted it was undisputed that Eriq's parents had approved a Behavioral Intervention Plan, which specifically included the use of crisis intervention, i.e., "physical restraint." Further, the trial court cited the provisions of R.C. 3319.41(G), which provides in part:
 Persons employed or engaged as teachers, principals, or administrators in a school * * * may, within the scope of their employment, use and apply such amount of force and restraint as is reasonable and necessary to quell a disturbance threatening physical injury to others, to obtain *Page 11 
 possession of weapons or other dangerous objects upon the person or within the control of the pupil, for the purpose of self-defense, or for the protection of persons or property.
 {¶ 27} According to the affidavit of Mary Ey, the executive director of educational services and resources for the school board, a "Behavior Intervention Plan" was developed which "specifically included use of non-violent Crisis Intervention, known often times to lay people as physical restraint." (Ey Affidavit, at ¶ 8.) Appellee Lensenmayer, the principal of Stockbridge Elementary during the time of the alleged incidents, averred that Eriq, a special needs student, "often exhibited behaviors inappropriate for the school setting that threatened the safety of others and himself," and that, in order to protect the safety and well-being of Eriq, other students, and the staff, "physical intervention, restraint and direction were often incorporated by myself, Julie Watson, Cindy Cremeans and Twanna Walker." (Lensenmayer Affidavit, at ¶ 4-5.) Lensenmayer further averred that at no time did she act with intent to harm Eriq nor did she believe there was any risk of injury in attending to him.
 {¶ 28} According to the affidavit of appellee Watson, Eriq would lie on the floor kicking his arms and legs in the hallway near a glass window, and near other students. Further, he would climb and jump over bookshelves, run around the building in an attempt to run out of the building, as well as throw chairs and scissors across the room when other children were nearby. Affidavits describing similar conduct were filed by appellees Cremeans and Walker.
 {¶ 29} A cause of action for civil assault involves "the `intentional offer or attempt, without authority or consent, to harm or offensively touch another that reasonably places the other in fear of such contact.'" Batchelder v. Young, Trumbull App. No. 2005-T-0150, *Page 12 2006-Ohio-6097, at fn. 3. Further, "[a] key element of assault is that the alleged tortfeasor `knew with substantial certainty that his or her act would bring about harmful or offensive contact.'" Coyle v.Stebelton (June 15, 2001), Fairfield App. No. 00CA74, quoting Smith v.John Deere Co. (1993), 83 Ohio App.3d 398, 406. A cause of action for battery "involves the `intentional, unconsented, contact with another.'"Batchelder, supra, at fn. 3.
 {¶ 30} In the present case, the evidence construed most strongly in favor of appellants does not give rise to claims for civil assault or battery against the individual school employee appellees. Further, even assuming appellants had presented evidence of a prima facie case, the trial court did not err in finding that appellees are statutorily immune, pursuant to R.C. 2744.03(A)(6), as appellants failed to present evidence that appellees acted with malicious purpose, in bad faith, or in a wanton or reckless manner. The Ohio Supreme Court has defined the term "reckless" as meaning "the conduct was committed `"knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent."'"Cater v. City of Cleveland (1998), 83 Ohio St.3d 24, 33, quotingMarchetti v. Kalish (1990), 53 Ohio St.3d 95, 96.
 {¶ 31} The record evidence in this case, construed most strongly in favor of appellants, does not demonstrate that appellees, in restraining Eriq at school, knew or had reason to know that their conduct created an unreasonable risk of physical harm to another and that such risk was substantially greater than that necessary to make such conduct negligent. Thus, the trial court properly granted summary judgment in favor of the individual appellees as to appellants' claims for assault and battery. *Page 13 
 {¶ 32} Under the second assignment of error, appellants raise an apparent constitutional argument, contending that the trial court denied them redress of the courts for the injuries done to Eriq. In support, appellants cite the Ohio Supreme Court's decision in Carbone v.Overfield (1983), 6 Ohio St.3d 212, in which the court held that a board of education was not protected under the doctrine of governmental immunity.
 {¶ 33} Appellants' reliance upon Carbone is not persuasive, inasmuch as, in 1985, "the law regarding liability for political subdivisions changed with the enactment of R.C. Chapter 2744." Spotts v. ColumbusPublic Schools (Apr. 19, 1990), Franklin App. No. 89AP-1003. See, also,Neal v. Southwestern City School Dist. Bd. of Edn. (Dec. 8, 1994), Franklin App. No. 94APE06-796 (noting that "[i]n response to the court's decision in Carbone, the General Assembly enacted R.C. Chapter 2744, setting forth the limits of liability for political subdivisions and its employees in a three-tier approach").
 {¶ 34} Further, to the extent appellants appear to seek a determination that R.C. Chapter 2744 is unconstitutional, the record indicates that appellants did not raise the issue of the constitutionality of the statute before the trial court. In order for a party to challenge the constitutionality of a state statute, "the issue must be raised in the complaint or the initial pleading and the Ohio Attorney General must be properly served." M.B. v. Elyria City Bd. ofEdn., Lorain App. No. 05CA008831, 2006-Ohio-4533, at ¶ 6, citing R.C.2721.12(A). We also note that arguments challenging the constitutionality of R.C. Chapter 2744 as violative of the right to redress under Section 16, Article I, of the Ohio Constitution have been rejected by the Ohio Supreme Court. See, e.g., Fabrey v. McDonaldVillage Police Dept. (1994), 70 Ohio St.3d 351, 355 ("R.C. 2744.02[B][4] does not violate Section 16, Article I of the Constitution of Ohio"). *Page 14 
 {¶ 35} Based upon the foregoing, appellants' first and second assignments of error are without merit and are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
 BRYANT and KLATT, JJ., concur. *Page 1